Gerald SANDERSON, Respondent,

v.

**PORTA–FAB CORPORATION,**
**and Amerisure Companies,**
**Appellants.**

No. 74532.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 9, 1999.

the Commission do not support the Award and that there was not sufficient and competent evidence in the record to warrant making the award. We affirm.

### Standard of Review

■ The Commission is the ultimate trier of fact in workers' compensation cases. *Counts v. John Fabick Tractor Co.,* 745 S.W.2d 839, 840 (Mo.App. E.D.1988). It is the sole judge of the weight of the evidence and credibility of the witnesses. *Welborn v. Southern Equipment Co.,* 395 S.W.2d 119, 126 (Mo.banc 1965). It is in the Commission's sole discretion to determine the weight to be given expert opinions, and that cannot be reviewed by this Court. *Cahall v. Cahall,* 963 S.W.2d 368, 371 (Mo.App. E.D.1998). Our review is limited to determining whether the Commission's award is supported by competent and substantial evidence. *Kintz v. Schnucks Markets, Inc.,* 889 S.W.2d 121, 123 (Mo.App. E.D.1994); *Willis v. Jewish Hospital,* 854 S.W.2d 82, 84 (Mo.App. E.D. 1993). This Court views all evidence and inferences in a light most favorable to the award and will not substitute its judgment for that of the Commission, even if this Court would have made a different initial conclusion. *Hunsperger v. Poole Truck Lines, Inc.,* 886 S.W.2d 656, 658 (Mo.App. E.D. 1994). In examining the record, we must liberally construe all provisions of the Workers' Compensation Act to resolve all doubts in favor of the employee. *Cook v. Sunnen Products Corp.,* 937 S.W.2d 221, 224 (Mo. App. E.D.1996) (citations omitted).

### Factual and Procedural Background

Claimant has worked for Employer as a shop carpenter for over 27 years. In approximately April or May 1996,[1] Claimant was moving a panel when he twisted his back. At that time, he noticed a kink in the center of his back at the belt line and noted a slight pain down his left leg that tingled for awhile. Claimant took a pain reliever that evening and felt better the next day. He missed no work after the accident.

Raymond J. Flunker, Jeffrey M. Proske, Evans & Dixon, St. Louis, for appellant.

Nancy R. Mogab, Mogab & Hughes, St. Louis, for respondent.

RICHARD B. TEITELMAN, Judge.

Porta–Fab Corporation and Amerisure Companies (collectively, "Employer") appeal from a Temporary or Partial Award of the Labor and Industrial Relations Commission finding that Gerald Sanderson ("Claimant") met his burden of proving an accident arising out of and in the course of employment, awarding temporary total disability for 48 weeks and ordering Employer to provide treatment until Claimant reaches maximum medical improvement. On appeal, Employer denies liability for the payment of any compensation, arguing that the facts found by

1. Much of the testimony in the record refers to this accident as having occurred on May 1. However, Claimant testified that he believed the accident occurred around the middle of April. Due to the uncertainty in the record, we will refer to the April or May accident as the "first accident."

On June 10, 1996, Claimant began his shift at work performing activities that required heavy lifting. Later, Claimant was putting hinges on doors, an activity that required him to remain in a stooped, kneeling position for extended periods of time. During the shift, Claimant had to stand and stretch several times because his back was hurting. When his shift was over, Claimant used a door to help himself up. While driving home, Claimant discovered that he could not lift his right foot to the brake. His right foot felt numb and his back hurt.

Claimant saw Dr. Lawrence Lenke the next day. Claimant was originally sent to physical therapy, but eventually had an MRI which disclosed a herniated disc and severe spinal stenosis. Dr. Lenke performed surgery on Claimant on July 31, 1996. As of the time of trial, Dr. Lenke had not released Claimant to return to work, and Claimant was to return to see him in July 1997.

Dr. Lenke's deposition was offered and admitted at the hearing before the ALJ. Dr. Lenke testified that Claimant's job was a triggering or precipitating factor, and states that Claimant's job was a fairly active one and contributed to Claimant's overall condition. He also describes other factors that contributed to Claimant's injury: genetics, use of the back, Claimant's weight, and force applied to the back over time. Dr. Lenke opined based upon a reasonable degree of medical certainty that Claimant herniated his disc at the June 10 accident, mainly because of the timing of Claimant's subsequent neurologic changes. Dr. Lenke did not state specifically that he was aware of the first accident, but did testify that he knew Claimant had been experiencing some back problems prior to the June 10 accident.[2]

Dr. Eli Shuter examined Claimant in January 1997. Claimant told Dr. Shuter about both the first accident, in which he had twisted his back, and the June 10 accident, in which he had trouble standing up after prolonged stooping and kneeling while installing hinges and subsequently experienced pain radiating into both lower extremities.

Dr. Shuter's deposition was offered and admitted at the hearing before the ALJ, and he was also called to testify in person. Dr. Shuter testified in his deposition that the first accident and the June 10 accident were the direct cause of Claimant's injuries. When called to testify in person, Dr. Shuter testified that Claimant's first accident and June 10 accident were a substantial and direct factor in causing the disc herniation and aggravation of the spinal stenosis. Dr. Shuter testified that he knew that the work activities were a substantial factor because "the mechanism of the injuries ... were highly compatible with the type of injuries which caused the conditions [he had] diagnosed, and because symptoms developed for the first time were increased immediately following those activities." Dr. Shuter testified that the "mechanism" he referred to for the first accident was a sudden twisting of the back, and for the June 10 accident was a prolonged bending.

The ALJ found (1) that Claimant failed to prove that he suffered a compensable injury at work sometime in April or May 1996 and (2) that there was no credible evidence that the work-related activities on June 10, 1996 were a substantial factor in causing the injury, that the injury could not be seen to have followed as a natural incident of his work, that it could not fairly be traced to his employment as a proximate cause, and that Claimant did not prove the injury did not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal non-employment life.

---

2. Claimant had experienced previous back problems. In 1982 or 1983 he was injured while working for Employer and received chymopapain injections. He was off work for approximately five months following this treatment. The area of his back injured at that time was lower than the L2–3 level. Claimant had increased back problems in 1990, and was prescribed a back manipulation procedure that was performed in the hospital. Claimant was off work for one to two weeks following that incident. In both instances, Claimant returned to normal job duties. Although Claimant would occasionally experience some numbness in his left foot or have aches and pains, he never missed time from work and could treat himself with Tylenol.

The Commission, in a Temporary or Partial Award dated May 7, 1998, reversed the ALJ's decision, finding that the doctors' testimonies were credible and complementary; that Claimant had sustained his burden of proof by competent and substantial evidence; that Claimant had incurred a compensable work-related injury by accident on June 10, 1996; that the evidence proved that Claimant's work was a substantial factor in causing his injury; that the injury was a natural incidence of his work; that the injury can be fairly traced to his employment as a proximate cause; and that the risk was related to the employment and not as a result of some hazard or risk outside of employment. The Commission affirmed the ALJ's decision regarding the first accident.

Employer now appeals to contest the Commission's findings of liability.[3]

## I

■ Employer first argues that the Commission erred in finding that Claimant met his burden of proving that an accident of June 10, 1996 was a substantial factor in his medical condition. Employer relies on the fact that Dr. Lenke did not specifically state that the June 10 accident was a "substantial factor" in causing the injury, and that Dr. Shuter testified that both accidents were a substantial and direct factor in causing the injury.

■ In a workers' compensation proceeding, the "claimant has the burden of proving all the essential elements of the claim and must establish a causal connection between the accident and the injury." *Cook v. Sunnen Products Corp.,* 937 S.W.2d at 223. The claimant does not have to establish the elements of his case on the basis of absolute certainty; it is sufficient if he shows them by reasonable probability. *Id.* "Probability means founded on reason and experience which inclines the mind to believe but leaves

room for doubt." *Id.,* citing *Fischer v. Archdiocese of St. Louis–Cardinal Ritter Institute,* 793 S.W.2d 195, 198 (Mo.App. E.D. 1990).

Section 287.020.3(2), RSMo 1994, provides, in pertinent part, that an injury "shall be deemed to arise out of and in the course of the employment" if "it is reasonably apparent, upon consideration of all the circumstances, that the employment is a substantial factor in causing the injury."

■ Whether or not the employment is a substantial factor in causing the injury is a question of fact. *Cahall v. Cahall,* 963 S.W.2d at 372. The Commission, and not the physician, is the trier of fact in workers' compensation cases. *Counts v. John Fabick Tractor Co.,* 745 S.W.2d at 840. Therefore, even if a testifying physician fails to use the exact words of Section 287.020.3, we will affirm the Commission's award if the substance of the physician's testimony establishes that there is substantial evidence upon which to base the award. See, e.g. *Mayfield v. Brown Shoe Co.,* 941 S.W.2d 31, 36 (Mo. App. S.D.1997).

In the case at bar, Dr. Lenke testified that the June 10 accident was a triggering or precipitating factor, and also that it was the cause of Claimant's injury. Dr. Shuter testified by deposition that the first accident and the June 10 accident were the direct cause of Claimant's injury. When he appeared at the hearing before the ALJ, Dr. Shuter testified that the first accident and the June 10 accident were a substantial and direct factor in causing Claimant's injury. It is clear that there was evidence upon which the Commission could base a finding that the June 10 accident was a "substantial factor" in causing Claimant's injury.[4] Contrary to Employer's assertion, the fact that Dr. Lenke testified that the accident was a triggering or precipitating factor does not mean that Claimant's

---

3. Generally, no appeal lies from a temporary or partial award. *Cahall v. Cahall,* 963 S.W.2d 368, 371 (Mo.App. E.D.1998). "However, appellate review on the issue of liability in a workers' compensation case is permissible although an award is denominated 'temporary or partial.'" *Id.,* citing *Stufflebean v. Crete Carrier Corp.,* 895 S.W.2d 115, 116 (Mo.App. W.D.1995).

4. Though the Commission found Dr. Shuter's testimony to be credible, the Commission specifically stated in its award that "[e]ven without the testimony of Dr. Shuter, the evidence demonstrates a causal link between the herniated disc and the claimant's work."

work was not also a substantial factor. *Cahall v. Cahall*, 963 S.W.2d at 372.

## II

■ Employer next argues that there was not sufficient and competent evidence in the record to warrant making the award because the ALJ and Commission differed regarding the credibility of Dr. Shuter's testimony and because there was evidence that the "not work related" first accident actually caused the disc herniation. We disagree.

The ALJ specifically found Dr. Shuter's testimony to be less credible than that of Dr. Lenke. The Commission, however, found that determination to be "puzzling" because the ALJ did not comment on Dr. Shuter's demeanor when testifying live and because the testimony of Dr. Shuter and Dr. Lenke "do not substantially deviate on the issue of causation."

■ Generally, we defer to the findings of the Commission regarding credibility of witnesses. *Welborn v. Southern Equipment Co.*, 395 S.W.2d at 126. However, there is a historic principle of due deference in cases where the Commission and the ALJ, who heard live testimony, differ. "The principle of due deference to the findings of those before whom witnesses gave oral testimony, sometimes referred to as triers of the facts, is applicable only in situations where the evidence to be reviewed is evenly balanced, or very close to being evenly balanced, and the reviewing tribunal is in grave doubt as to the proper decision to make." *Davis v. Research Medical Center*, 903 S.W.2d 557, 568 (Mo.App. W.D.1995).

■ We agree with the finding of the Commission that the testimony given by the two physicians did not substantially differ. Therefore, the evidence in this case is not "evenly balanced" so that affording due deference to the ALJ might be necessary. Employer presented no medical experts of its own and no expert said that the work was not a substantial factor. Dr. Shuter testified specifically that work was a substantial factor in the development of the herniation. Dr. Lenke was never asked that question. The absence of such testimony from Dr. Lenke

does not mean that he disagrees with Dr. Shuter on the issue of whether Claimant's work caused the herniation. Moreover, the Commission is authorized to make its own factual findings on credibility upon articulating its reason for differing with the ALJ, which it did here. *Davis v. Research Medical Center*, 903 S.W.2d at 571.

Employer also states that the ALJ and the Commission found that Claimant failed in proving that an accident arising out of and in the course of employment occurred in April or May 1996 and that Claimant offers no argument to refute this finding. Therefore, Employer concludes that "we are left with two incidents, one work related and one not work related" and there is evidence that the first "incident" actually caused the disc to herniate.

It is important to draw a distinction between "non-compensable" and "not work-related." Regarding the first accident, the Commission found that "no injury occurred . . . which resulted in the need for medical care or temporary total disability." The Commission did not find that the accident did not occur, or that the accident was not work-related. However, Claimant did not miss any work after the first accident, did not seek medical care until after the June 10 accident, and was awarded temporary total disability payments and future medical care for the June 10 injury. Therefore, the first accident was non-compensable because there was no need for further compensation beyond that which was awarded for the June 10 accident.

Moreover, even if Employer is correct in its assertion that there are two potential dates upon which the disc could have herniated, that issue is a question of fact for the Commission that will not be disturbed by this Court. The Commission had testimony regarding both accidents before it and it determined that the June 10 accident was a substantial factor in causing Claimant's injury.

We conclude from a review of the record that the Commission's findings that Claimant's June 10, 1996 work-related accident was a substantial factor in causing his herniated disc are supported by competent and substantial evidence and are not contrary to the

overwhelming weight of the evidence. We reach only the issue of liability in this opinion. We do not have jurisdiction at this time to review the amount or content of the temporary or partial award, which is subject to modification prior to a final award. The award of the Commission is affirmed as to the issue of liability.

JAMES R. DOWD, P.J. and LAWRENCE G. CRAHAN, J. concur.